UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANDREW KITCHEN,    Case No. 23-13075
    Plaintiff,
    v.    Mark A. Goldsmith
        United States District Judge

KAREN D. MCDONALD, *et al.*,
    Defendants.    Curtis Ivy, Jr.
_____/    United States Magistrate Judge

**REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS (ECF Nos. 14, 36)**

## I.    PROCEDURAL HISTORY

Plaintiff Michael Kitchen filed this prisoner civil rights suit on December 5, 2023, without the assistance of counsel.  (ECF No. 1).  Defendants McDonald, Day and Ruddy ("Oakland County Defendants"), from the Oakland County Prosecutor's Office, and Casillas and Heinritz ("MDOC Defendants"), from the Michigan Department of Corrections, moved to dismiss the complaint.  (ECF Nos. 14, 36).  The motions are fully briefed and ready for report and recommendation. Plaintiff moved for leave to amend the complaint.  (ECF No. 29).  The undersigned denied that motion in a separate Order filed concurrently.

For the reasons discussed below, the undersigned recommends that the motions to dismiss be **GRANTED**.

## II.    COMPLAINT ALLEGATIONS

In his original complaint, Plaintiff alleges that the Oakland County

Defendants and MDOC Defendants worked together to "smear his character"

during May 2018 until May 2022, in retaliation for a separate civil rights lawsuit

and challenge to his criminal sentence.  (ECF No. 1, PageID.6).  He filed a lawsuit

in 2018 against former Governor Snyder and MDOC officials about issues related

to his parole.  Plaintiff raised claims including that he was convicted by an all-

white jury and that the state court judge who presided over his criminal trial was

racially biased.  (*Id.* at PageID.7).  The Oakland County Defendants were aware of

Plaintiff's racial bias claims and "became angry" about the accusations.  (*Id.*).

Sometime in 2019 and between April and August 2022, Oakland County

Defendants allegedly contacted MDOC Defendants for information about an

altercation involving Plaintiff and fellow prisoner James Mitchell.  (*Id.* at

PageID.7-8).  Mitchell is a known white supremacist who approached Plaintiff for

help in an upcoming fight with another prisoner.  Plaintiff declined to help him.

MDOC Defendants were mad at Plaintiff for not helping Mitchell because Mitchell

is a white prisoner.  The failure to help allegedly caused MDOC Defendants to

fabricate or help fabricate documents with Oakland County Defendants falsely

accusing Plaintiff of putting a hit on Mitchell.  (*Id.* at PageID.8).  The Defendants

generated or disseminated the false accusations.  Ruddy included the accusations in

2

a response brief filed in state court.  (*Id.* at PageID.9).  All Defendants also allegedly disseminated the accusations throughout MDOC and the Oakland County Prosecutor's Office in retaliation for his claims of racial bias against the state court judge and for not helping Mitchell.  (*Id.* at PageID.10, 12).

MDOC Defendants, "with the assistance of" Oakland County Defendants, then filed a Special Problem Offender Notice ("SPON") in Plaintiff's prison file and disseminated the false allegations about Plaintiff putting out a hit on Mitchell and Mitchell threating to retaliate against him.  (*Id.* at PageID.12).  "As a direct and proximate result of the actions of Defendants," Plaintiff was terminated from his work assignment, was denied transfer to a level II prison, and was delayed for enrollment at Mott Community College.  (*Id.* at PageID.15).

Plaintiff sues for retaliation in violation of the First Amendment, a violation of Equal Protection, racial intimidation, defamation, and slander.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011)

(Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

    B.    <u>Oakland County Defendants' Motion to Dismiss</u>

Oakland County Defendants move to dismiss the complaint on the basis of absolute prosecutorial immunity; Defendant McDonald is the Oakland County Prosecutor, Defendants Day and Ruddy are assistant prosecutors in that office. (ECF No. 14). They insist that Defendant Ruddy's act of filing a response brief in state court discussing the SPON was done in connection with her duties as a prosecutor during post-conviction or appellate proceedings that is protected by prosecutorial immunity. They contend that the same is true for McDonald and Day based on Plaintiff's assertion that they also filed that brief. (*Id.* at PageID.118). They also argue that Plaintiff failed to state a claim under § 1983 because Plaintiff's allegations are conclusory and without supporting facts. (*Id.* at PageID.123).

As an initial matter, in support of the motion, Defendants attach documents filed with the Sixth Circuit Court in Michigan that Plaintiff did not attach to his complaint. Generally, a court cannot consider matters outside the complaint when ruling on a motion to dismiss under Rule 12(b)(6). *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009). That said, the court may consider material

attached to the complaint, "incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), and documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint and are central to the plaintiff's claims. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). And the court may consider public records and matters of which a court may take judicial notice. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), abrogated on other grounds, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002). Documents on a court's public docket are public records, so the undersigned considers them here without converting the motion to one for summary judgment. Not only are the court documents a matter of public record, but Plaintiff also referenced them in his complaint and they are central to the claims against Oakland County Defendants, so they can be considered here without converting the motion to one for summary judgment.

Prosecutors are entitled to absolute immunity on claims for monetary damages under § 1983 for conduct intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Courts employ a "functional approach" to determine whether a prosecutor's acts entitle her to absolute immunity. *Burns v. Reed,* 500 U.S. 478, 486 (1991). This approach "looks to 'the nature of the function performed, not the identity of the

actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)

(quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).  Acts taken in the

prosecutor's function as advocate for the state are absolutely immune from suit.

Only qualified immunity is available to prosecutors when they perform

"investigative" or "administrative" functions unrelated to judicial proceedings.

*Burns*, 500 U.S. at 483, n. 2.  "[T]he preliminary gathering of evidence that may

ripen into a prosecution, are too attenuated to the judicial process to afford absolute

protection." *Buchanan v. Metz*, 6 F. Supp. 3d 730, 741 (E.D. Mich. 2014).  A

prosecutor acting in a prosecutorial capacity is protected "even for egregious

conduct such as 'the knowing use of false testimony and the suppression of

material evidence at [a] criminal trial.'" *Id.* at 739 (quoting *Spurlock v. Thompson,*

330 F.3d 791, 797 (6th Cir. 2003)).

   "The Sixth Circuit has extended absolute immunity for adversarial acts of

prosecutors past the trial context in some circumstances, but those circumstances

are limited to post-conviction proceedings, including direct appeals, habeas corpus

proceedings, and parole proceedings, where the prosecutor is personally involved

in the subsequent proceedings and continues [their] role as an advocate." *Jackson*

*v. City of Cleveland*, 64 F.4th 736, 744 (6th Cir. 2023) (emphasis removed)

(citation omitted).

Plaintiff says his claims against these Defendants have two parts: (1) filing false information in the response brief in state court and (2) creating or disseminating the false statements in the SPON throughout MDOC and other places in retaliation for challenging his sentence.  (ECF No. 27, PageID.351).  He says that since these Defendants were seeking information from MDOC that would make Plaintiff look bad, they were not acting as prosecutors.  He likens this case to *Howard v. Livingston County*, 2023 WL 334894 (6th Cir. Jan. 20, 2023).  There, the Sixth Circuit made the difference clear between a prosecutor's functions in the judicial phase of criminal proceedings that are protected, and investigative functions normally performed by a police officer that are not protected.  *Id.* at *4.  Prosecutors searched for clues and evidence against a probation officer and sent a letter to the officer's employer accusing her of perjury without probable cause.  The court concluded that those actions had no apparent relationship with the judicial phase of a criminal proceeding.  *Id.* at *5.  Here, Plaintiff says the Oakland County Defendants contacted the MDOC Defendants searching for "dirt" on him, and when they found none, they falsely accused him of being transferred to a higher security prison after initiating a hit on Mitchell.  These Defendants then spread that information "everywhere."  (ECF No. 27, PageID.355).

Defendants state court attachments reflect that Ruddy filed a response brief, as ordered by the judge, in opposition to Plaintiff's Motion to Correct Invalid

Sentences.  The signature page includes McDonald's and Day's names and positions within the Oakland County Prosecutor's Office, but Ruddy filed the brief. (ECF No. 14, PageID.269-86).  Ruddy wrote that Plaintiff was not eligible for parole because of the many misconducts he had received in prison.  She also noted a misconduct from December 2020, and that Plaintiff was moved to a level IV security prison during October 2021.  (*Id.* at PageID.283-84).  The SPON, prepared by MDOC Defendants, is attached to the brief.  (*Id.* at PageID.290).  It states that Plaintiff put out a hit Mitchell which was carried out by a third party, and that Mitchell plans to retaliate against Plaintiff.  (*Id.*).

In the view of the undersigned, statements made in the brief in response to Plaintiff's challenge to his sentence constitute actions taken in Ruddy's capacity as a prosecutor in the post-conviction phase of Plaintiff's criminal proceeding.  Filing this response brief, even if it contained inaccurate statements, falls within the ambit of absolute prosecutorial immunity.  *See Burns*, 500 U.S. at 485 ("knowing use of false testimony before the grand jury and at trial" is protected by absolute immunity).  This conclusion would extend to McDonald and Day if they helped draft the response brief.

Plaintiff's contention that the statements in the response brief were unrelated to the specific post-conviction proceedings, i.e., unrelated to whether there was racial bias in his sentencing, does not change the conclusion.  As explained in the

response brief, the information from the SPON was used to rebut Plaintiff's

insistence that he committed the past crimes as part of his "youthful propensity and

immaturity."  Ruddy used it to show that he continued to engage in assaultive

behavior as an adult in prison.  (ECF No. 14, PageID.284).  Plaintiff's contention

fails both because this portion of the response brief was relevant to Plaintiff's

motion and because, as stated, the statements are prosecutorial advocacy, not

investigative or administrative work, so they are protected by absolute immunity.

Plaintiff argues that Defendants did not address his claims about conspiring

to draft the SPON or at least disseminating the false statements in the SPON

"everywhere," or that they communicated with MDOC Defendants to find "dirt"

on him.[1]  He insists these actions were investigatory and exempt from immunity.

The undersigned finds Defendants' response to these allegations in their argument

that the complaint is too conclusory to state a valid claim to relief.  (ECF No. 14,

PageID.123-25).

As for the conspiracy claim, such claims must be pled with some degree of

specificity and vague and conclusory allegations unsupported by material facts will

not be sufficient to state such a claim under § 1983.  *Gutierrez v. Lynch*, 826 F.2d

---

[1] Even if Defendants did not address all of Plaintiff's claims, the Court can and must consider the viability of the claims under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e.  These statutes require courts to dismiss actions filed by prisoners and persons proceeding *in forma pauperis* that fail to state a claim on which relief can be granted.

1534, 1538 (6th Cir. 1987). The complaint does not allege when conversations occurred between Oakland County and MDOC Defendants, the content of those conversations, how Oakland County Defendants disseminated the false statements beyond what was included in the response brief (and the impact of those unspecific instances of dissemination), or any other supporting facts necessary to raise the claim that is plausible on its face. For instance, the Court cannot accept as true the allegation that they communicated with other parties to find dirt on him without any supporting facts; Plaintiff's suspiciom without more are not facts. That Plaintiff groups the defendants together contributes to the problem—which Defendant spoke to whom, when, and about what? *Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions. Threadbare recitals of a cause of action's elements, supported by mere conclusory statements do not suffice."); *Twombly*, 550 U.S. at 555-57. Notably, Plaintiff does not allege that he ever had contact with any of the Defendants to know that these five defendants worked together to harm him; he does not detail how he discovered the alleged conspiracy nor describe any overheard conversations between the defendants that support the allegations. *See Lewis v. Greason*, 2023 WL 2949998, at *13-14 (E.D. Mich. Feb. 15, 2023) (citing *Quigley v. Abel*, 2020 WL 6390163, at *6 (S.D. Ohio Nov. 2, 2020)). Plaintiff's

allegations are no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

The undersigned recognizes that plaintiffs do not have an easy task pleading a conspiracy claim. That said, case law does not permit a conclusory conspiracy claim to go forward to allow the plaintiff the opportunity in discovery to find evidence of the suspected conspiracy. We need more than suspicion of conspiracy. We must, at this stage, be able to draw the reasonable inference that the defendants indeed conspired with one another, in a single plan, to harm plaintiff. The complaint does not allow the Court to draw such an inference.

Moreover, even if Oakland County Defendants communicated with MDOC Defendants about the SPON and the facts supporting the SPON, or otherwise asked for information about Plaintiff from MDOC Defendants, then wrote those facts into the response brief, these are not the kinds of investigatory acts that are outside a prosecutor's judicial function. One would not expect a police officer to communicate with prison officials about an inmate's behavioral history for a prosecutor's response to the inmate's sentencing challenge. Rather, it is closely intwined with the judicial process of supporting the sentence and less like investigative acts that are not immune. This is especially so considering Ruddy's explanation for using the information in the response brief—to show that Plaintiff engaged in assaultive behavior during his incarceration as an adult.

Plaintiff's state-law claims are addressed below.

C.     MDOC Defendants' Motion to Dismiss

MDOC Defendants Casillas and Heinritz argue that Plaintiff failed to allege sufficient facts to state a plausible claim to relief against them. (ECF No. 36). As with the Oakland County Defendants, Plaintiff alleged that MDOC Defendants retaliated in violation of the First Amendment and violated the Equal Protection Clause of the Fourteenth Amendment, as well as violations of state law, for the same conduct except filing the response brief.

Defendants begin their motion arguing that Plaintiff's complaint impermissibly groups defendants together such that it is unclear in what ways each defendant was personally involved in a violation of Plaintiff's rights. The undersigned agrees. Not only does Plaintiff group the Defendants together throughout the complaint, he also asserts that actions may have been taken by non-parties. (*See, e.g.*, ECF No. 1, PageID.8, ¶ 22) ("Kitchen's failure to prevent [the fight] caused Defendants Casillas, Heinritz, and/or other(s) to fabricate or help to fabricate the documents. . . ."). The Sixth Circuit says that these types of allegations do not satisfy *Iqbal*'s pleading requirements. *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (finding that complaint failed to state a *Bivens* claim against two federal agents because it referred to all defendants categorically and did not identify the personal involvement of the agents); *Miller v.*

13

*City of Detroit*, 2013 WL 2446129, at \*3 (E.D. Mich. June 5, 2013) ("The complaint in the present case suffers from the identical infirmity as did the complaint in *Marcilis*.  In both cases, the complaint consists almost entirely of generalized allegations against 'defendants' collectively, as opposed to specific allegations as to 'what each defendant did to violate the asserted constitutional right.'"); *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015) ("'shotgun' allegations of general misconduct' by a group of defendants is not sufficient to state a claim against each.").  Though the undersigned shares Defendants' concern about the pleading, dismissal on that ground is not recommended because, as shown below, even ignoring this deficiency the claims raised are not viable.

As much as Plaintiff is alleging that MDOC Defendants conspired with Oakland County Defendants and others, the conspiracy claim should be dismissed for the reasons addressed above—Plaintiff did not plead the claim with the requisite particularity.  Instead, the claim rests on his speculation that these five defendants communicated and worked together to harm his chances at a reduced sentence.

MDOC Defendants assert that the First Amendment claim should be dismissed because there are no facts establishing the elements of the claim.  A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an
> adverse action was taken against the plaintiff that would
> deter a person of ordinary firmness from continuing to
> engage in the conduct; and (3) there is a causal
> connection between elements one and two—that is, the
> adverse action was motivated at least in part by the
> plaintiff's protected conduct.

*Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024) (quoting *Thaddeus-X v.*

*Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendants argue that Plaintiff did not allege protected conduct, but to the

extent that the protected conduct is the litigation concerning his sentence, they

respond that there are no allegations to establish they were aware of the litigation.

(ECF No. 36, PageID.480).  Even if the first element were satisfied, they contend

that filing the SPON was not an adverse action because issuance of the SPON only

prevented Plaintiff from being housed in the same facility as Mitchell.  (*Id.* at

PageID.480-81).  As for the last element, they argue that there are no facts showing

that the SPON would not have been filed absent any protected conduct.  The SPON

was filed because Mitchell said he would retaliate against Plaintiff.  (*Id.* at

PageID.481-82).

The undersigned also assumes the protected conduct is Plaintiff's post-

conviction proceedings, so the first element could be satisfied.  Plaintiff contends

that, apart from those proceedings, his failure to assist Mitchell in the fight

constituted protected conduct.  (ECF No. 38, PageID.503).  Failing to assist

another prisoner, even when race is involved, is not protected conduct because the First Amendment protects the right to seek redress of grievances from the government; it does not protect all conduct occurring in a prison setting. *See, e.g.*, *Thaddeus-X*, 175 F.3d at 390-91 (recognizing that only speech related to a prisoner's right to access the courts or speech seeking redress of grievances amounts to protected conduct).

The claim fails at the second element. Plaintiff alleges that the creation of the SPON was adverse action. He argues that it is reasonable to conclude that accusing a prisoner of plotting to murder another prisoner could result in "a swift and stern response," and thus the accusation in the SPON satisfies this element. (ECF No. 38, PageID.505) (quoting *Meadows v. Coppick*, 2022 WL 14752283, at *10 (S.D. Ohio Oct. 25, 2022)). While this element is unconcerned with whether the plaintiff himself was actually deterred from engaging in protected conduct after the adverse action, it is inescapable that Plaintiff alleged no "swift and stern" consequences from the SPON that would meet this element. He says MDOC Defendants filed the SPON and others disseminated it, but nothing that would suggest a reasonable person would be deterred from engaging in protected conduct just because a SPON was filed or was disseminated.

The consequences he says he suffered because of the SPON do not constitute adverse action. As a result of the SPON, Plaintiff alleges he lost his

prison job, he was not transferred to a level II prison, and he was delayed in taking classes at Mott Community College.  As Defendants note, prisoners do not have a constitutionally protected right to be housed in a particular prison.  And though Plaintiff alleges that he lost his job as a result of the SPON, without more this does not constitute adverse action.  *See Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) ("a prisoner does not have a constitutional right to prison employment or a particular prison job."); *Hodge v. Renfrow*, 2019 WL 3997697, at *5 (W.D. Ky. Aug. 22, 2019) ("[T]he denial of a prison job has been held not to constitute an adverse action to support a retaliation claim."); *Jewell v. Leroux*, 20 F. App'x 375 (6th Cir. 2001) (a prisoner who alleged that he was transferred and lost his prison job in retaliation for filing grievances had not set forth facts showing that he suffered an adverse action.); *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) ("an inmate possesses no inherent constitutional right to placement in any particular prison").  If a prison transfer is not adverse action, declining to transfer is not adverse action, especially when there are no facts showing the consequences of not being transferred that would raise a question of adverseness.

And "[f]ederal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment."  *Saadalla v. Beardslee*, 2007 WL 4465255, at *3 (W.D. Mich. Dec. 13, 2007) (collecting

cases); *Bullock v. McGinnis*, 5 F. App'x 340, 348 (6th Cir. 2001) (prisoners have no constitutional right to rehabilitation, education, or jobs).  Not only is there no constitutional right to take classes, but there are also no allegations that would establish that a delay in taking college classes has such an impact on prisoners that it would deter a prisoner of ordinary firmness from engaging in protected activity. In short, the alleged consequences of the SPON are insufficient to render the SPON adverse action.

Finally, under the causation element of Plaintiff's claim for retaliation, the subjective motivation of the decisionmaker is at issue.  The decisionmakers here, according to Plaintiff, are Defendants Cassillas and Heinritz.  Plaintiff offered no allegations connecting MDOC Defendants' issuance of the SPON to his post-conviction proceedings, for example that they were aware of the post-conviction proceedings or the allegations against the state court judge.  Instead, Plaintiff alleges that the MDOC Defendants issued and disseminated the SPON because he did not help Mitchell, a white prisoner, in a fight.  (*See* ECF No. 1, PageID.8, ¶ 24).  Declining to help a white prisoner is not protected conduct, so even if Defendants issued the SPON to retaliate for not helping Mitchell, this does not state a retaliation claim.

Plaintiff argues that the SPON was issued under strange circumstances ostensibly to imply that Defendants issued or were involved with the SPON for

retaliatory reasons.  He says that SPONs typically follow a misconduct charge.
Here, he insists that it is unusual that Mitchell, who the SPON indicates wanted to
retaliate against Plaintiff, was not given a misconduct ticket for threatening to
retaliate.  (ECF No. 38, PageID.498-99).  And because the SPON accuses Plaintiff
of putting out a hit on Mitchell, these things together lead Plaintiff to conclude that
the SPON was used to influence an adverse decision in post-conviction
proceedings.  (*Id.* at PageID.499).  The undersigned does not credit this
supposition.  First, Plaintiff did not allege that MDOC Defendants issued the
SPON to influence post-conviction proceedings.  Second, Plaintiff's position is
based on his speculation, not facts supporting a plausible inference that MDOC
Defendants used to SPON to influence court proceedings.

Plaintiff alleges violation of equal protection, but he gave no details to
support the claim.  In order to state a viable equal protection claim, "a plaintiff
must adequately plead that the government treated the plaintiff 'disparately as
compared to similarly situated persons and that such disparate treatment either
burdens a fundamental right, targets a suspect class, or has no rational basis.'"  *Ctr.
For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)
(quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470
F.3d 286, 299 (6th Cir. 2006)).  The "threshold element of an equal protection
claim is disparate treatment; once disparate treatment is shown, the equal

protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

Defendants cite the elements for selective prosecution equal protection claim from *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997), but Plaintiff does not allege that they engaged in selective prosecution. (ECF No. 36, PageID.482-83). As mentioned, however, the Court must screen and dismiss any claim which Plaintiff fails to state. Although Defendants cited the incorrect law, it does not preclude the undersigned for assessing the viability of the equal protection claim.

Plaintiff insists his complaint is about race discrimination. He says MDOC Defendants initiated the SPON (1) because he failed to help a white prisoner and (2) to aid Oakland County Defendants to "come after" him because of his conviction of inappropriately touching a white woman and his claim that the sentencing judge was racially biased (it is unclear that this second assertion is raised in the original complaint). (ECF No. 38, PageID.507-08). This, he says, shows disparate treatment.

A plaintiff alleging a violation of his right to equal protection must be similarly situated to those individuals with whom he compares himself in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir.

2011) (providing that "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff suggests he was discriminated against based on his race, but he did not allege facts from which to infer that Casillas or Heinritz treated similarly situated prisoners of a different race differently than Plaintiff with regard to SPONs. Therefore, the claim should be dismissed. *See Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (stating that a claim for race discrimination in prison discipline must be supported by allegations "that the people not disciplined were similarly situated and of a different race" to state an equal protection claim); *Merriman v. May*, 2020 WL 4904845, at *2 (N.D. Ohio Aug. 20, 2020) ("Even with the benefit of liberal construction, Plaintiff's conclusory statements that he did not receive a lower bunk assignment in unit 2 and was assigned a lower bunk in unit 5 because of his race are not supported by factual allegations, taken as true, from which this court may infer a plausible claim that Defendants intentionally discriminated against Plaintiff."); *Bell v. Admin. Bd. of Claims*, 2020 WL 2525827, at *4 (E.D. Mich. May 18, 2020).

Finally, "[w]here a district court has jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001). Given that the federal claims should be dismissed, Plaintiff's remaining state claims should also be dismissed, without prejudice.

Because the undersigned recommends that all claims be dismissed against the MDOC Defendants, their qualified immunity argument (which consists only of the assertion that they did not violate the Constitution) will not be addressed.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motions to be dismiss (ECF Nos. 14, 36) be **GRANTED** and that the case be **DISMISSED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date:  July 22, 2024.                                s/Curtis Ivy, Jr.
                                                       Curtis Ivy, Jr.
                                                       United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 22, 2024.

<u>s/Sara Krause</u>
Case Manager
(810) 341-7850